520 So.2d 1180 (1988)
STATE of Louisiana, Through DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Plaintiff-Appellant,
v.
CAUBARREAUX USED CARS, Defendant-Appellee.
No. 86-1074.
Court of Appeal of Louisiana, Third Circuit.
January 6, 1988.
*1181 Ronald R. Thompson, Baton Rouge, for plaintiff-appellant.
Darrel D. Ryland, Marksville, for defendant-appellee.
Before GUIDRY, FORET and YELVERTON, JJ.
FORET, Judge.
On September 25, 1985, the State of Louisiana, Through the Department of Transportation & Development, filed a petition for injunction in the Twelfth Judicial District Court, asking that Caubarreaux Used Cars, Inc. (incorrectly referred to as Caubarreaux Used Cars) be enjoined from unlawfully operating a junkyard. In response thereto, Caubarreaux Used Cars, Inc., along with its owner, Andre Caubarreaux, filed an answer and reconventional demand for damages for defamation (when referred to collectively, these parties shall hereinafter be called "Caubarreaux"). The State of Louisiana dismissed its injunction suit shortly after the answer and reconventional demand was filed. Trial on the merits was held on June 17, 1986, with the sole issue being Caubarreaux's reconventional demand for damages. The trial court rendered judgment in favor of Caubarreaux and against the State of Louisiana in the amount of $8,000, and the State has suspensively appealed this judgment.
On February 26, 1985, the State of Louisiana forwarded a letter to Caubarreaux by certified mail, stating that it was operating a junkyard in violation of La.R.S. 48:461.9 and giving Caubarreaux thirty days to submit a plan for screening or removal of the junkyard. In response thereto, Andre Caubarreaux states that he immediately phoned the Marksville office of the Department of Transportation & Development and was referred to the district office in Alexandria. He then called the district office in Alexandria, and the person he spoke to asked him if he did, in fact, operate a junkyard. When he informed such person that he did not, he was told to simply ignore the letter, which he did. No further communications took place between the litigants until suit was filed by the State on September 25, 1985, alleging that Caubarreaux was operating a junkyard unlawfully and further asking that it be enjoined from doing so. Shortly after the lawsuit was filed by the State, an article appeared in the September 28, 1985 edition of the Alexandria Daily Town Talk stating that Caubarreaux Used Cars, Inc., along with several other businesses or individuals, had been named as a defendant in a series of lawsuits seeking to enjoin persons or businesses *1182 from operating junkyards or automobile graveyards in violation of Louisiana law. Andre Caubarreaux learned of the lawsuit from his wife, but did not become convinced that the information was correct until he saw the newspaper article in the Town Talk. After reading the article, he immediately phoned John C. Young, the attorney filing the suit on behalf of the State, in order to find out what was going on. He then contacted the Alexandria Daily Town Talk and spoke to one of its reporters about this misunderstanding. This conversation resulted in a second newspaper article appearing in the September 29 edition of the Town Talk, which article set forth Caubarreaux's side of the story. Thereafter, Caubarreaux retained an attorney and filed an answer and reconventional demand, contending that statements made by the Statethat Caubarreaux was operating a junkyard and that such activity was unlawfulwere defamatory and that such statements caused damage to him individually as well as to his business.
The answer and reconventional demand was filed on October 15, 1985, and the State moved for dismissal of its lawsuit on October 21, 1985, stating that Caubarreaux no longer maintained junked automobiles on the subject property and that the lawsuit should therefore be dismissed. This dismissal was eventually granted on October 29, 1985. During this same time, John C. Young, the State's attorney, was interviewed by one or more members of the local media. In these interviews, he stated that the lawsuit against Caubarreaux had been dismissed because the junkyard had been removed. Caubarreaux then amended its reconventional demand, alleging that such statements were also defamatory in that Caubarreaux had never operated a junkyard or automobile graveyard on its premises and the statements made by Mr. Young were indicative of the fact that Caubarreaux had done so.
The first issue presented for our consideration on appeal is whether or not Caubarreaux has adequately proved all of the elements for a recovery in a defamation action. It is well settled that there are five elements which are prerequisite to a recovery in a defamation suit. They are:
1. Defamatory words
2. Publication
3. Falsity
4. Actual or implied malice
5. Resulting injury.
Rennier v. State, Through Dept. of Public Safety, 428 So.2d 1261 (La.App. 3 Cir.1983).

WERE STATEMENTS DEFAMATORY?
As noted above, the State alleged that Caubarreaux was operating a junkyard and Caubarreaux contends that this is a defamatory statement. The State also asserted that this activity was unlawful and "in violation" of state law, and Caubarreaux contends that these are, as well, defamatory statements. We will first determine whether or not it was defamatory for the State to accuse Caubarreaux of operating a junkyard.
The courts of our State have defined defamatory statements as follows:
"A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation." Brown v. News-World Publishing Corp., 245 So.2d 430 (La.App. 2 Cir. 1971).
In making such a determination, the words should be construed according to the meaning that will be assigned to such words by people of ordinary intelligence and sensitivity. Weatherall v. Dept. of Health & Human Resources, 432 So.2d 988 (La.App. 1 Cir.1983). Defamatory statements are divided into two groupsthose which are defamatory per se and those which are susceptible of a defamatory meaning. Lemeshewsky v. Dumaine, 464 So.2d 973 (La.App. 4 Cir.1985). A statement is considered as defamatory per se when it has "a natural tendency to injure a person in his occupation or to injure his reputation, even without considering extrinsic facts or *1183 surrounding circumstances." Lemeshewsky v. Dumaine, supra. As for the alleged defamatory statements made by the State of Louisiana, we find that it was not defamatory per se for the State to allege that Caubarreaux was operating a junkyard. Clearly, such a statement does not, in and of itself, have a tendency to injure a person in his occupation or injure his reputation. After all, junkyards and automobile graveyards are commonplace in today's business world and are perfectly legitimate and lawful business activities. Accordingly, we have little difficulty finding that this statement is not defamatory per se. We further find that, even considering the facts and circumstances of this case, this statement is not susceptible of a defamatory meaning, even assuming arguendo that the State was incorrect in its assertion that Caubarreaux did operate a junkyard or automobile graveyard on its property. However, even considering the fact that Caubarreaux Used Cars, Inc. is an automobile dealership, we do not believe that such a statement is defamatory. The trial court noted that it was "unlikely" that such an assertion would cause a customer to avoid going to Caubarreaux's to purchase a vehicle. We agree.
The trial court further found that while Mr. and Mrs. Caubarreaux seemed to be embarrassed and offended by the allegations, they were more probably being over sensitive and that their customers and friends did not attach much significance to such allegations. If the allegations did not discourage prospective buyers and if customers and friends did not attach much significance to the statement, it can hardly be said that such a statement exposed Caubarreaux to contempt, hatred, ridicule, or obloquy, nor can it be said that it deprived Caubarreaux of public confidence. Further, Andre Caubarreaux acknowledged that he did keep a line of cars on the premises which consisted of old or inexpensive cars and he referred to these vehicles as "clunkers." He further admitted that he owned and used a vehicle on the premises which was similar to a wrecker, referring to it as a "car hauler." These are activities which are somewhat akin to the activities carried on by an automobile graveyard or junkyard.
The State also alleged that Caubarreaux was operating the junkyard "in violation" of state law and that such activity was "unlawful." We must also determine whether or not these are defamatory statements. A statement accusing one of having committed a crime is defamatory per se. Rennier v. State, Through Dept. of Public Safety, supra. In Rennier, the word "perjury" remained on the plaintiff's driving record in spite of the fact that he had been exonerated of any such misconduct at a Department of Public Safety hearing. Rennier sued for defamation, and the trial court's award of $6,000 in general damages was affirmed on appeal. The appellate court noted that the statement accusing Rennier of perjury was defamatory per se in that such statement imputes a crime to another. Perjury is a felony under La.R.S. 14:123.
However, in this case there is no reference to any criminal offense in any of the pleadings filed by the State nor did any state employees make such assertions in any interviews with the local media. To accuse one of doing something unlawful does not necessarily imply, in the mind of a person of ordinary intelligence and sensitivity, that a crime has been committed. The average person in today's world is well aware of the fact that there are many activities which are unlawful but which are not criminal in nature. Thus, for these reasons, we find that it was not defamatory per se for the State to make such statements. From our review of the record, we find no evidence tending to indicate that the public reaction to such statements was such as to expose them to contempt, hatred, ridicule, or obloquy or cause them to be shunned or avoided. Nor can it be said that such statements tended to deprive them of the benefits of public confidence and, as the trial court noted, it was not established, by a preponderance of the evidence, that their business revenues dropped as a result of such statements. Indeed, the record indicates that the response of friends and customers never went beyond casual inquiry and occasional joking. This is hardly sufficient to characterize *1184 these statements as defamatory. It should also be pointed out that, to date, there is not one reported case in Louisiana holding that a statement accusing one of doing something "unlawful" or "in violation" of law is defamatory, and we find no support for such a contention in reviewing the jurisprudence of our sister states. Furthermore, courts should always be reluctant to find that statements contained in judicial pleadings are sufficient to constitute a basis for a defamation action. Bradford v. Murray, 467 So.2d 1297 (La. App. 4 Cir.1985), writ denied, 469 So.2d 988 (La.1985). Accordingly, and in view of the above, we find that statements accusing Caubarreaux of acting in violation of state law and further asserting that such activity was "unlawful" are not susceptible of a defamatory meaning. Therefore, having determined that no defamatory words were uttered, we need not consider the remaining elements prerequisite to a recovery in a defamation suit.
Having found, as we do above, that defendant has not been defamed by the utterances in the State's lawsuit, and finding no other theory under the facts of this case where defendant can recover damages as a result of this lawsuit, we reverse, vacate, and set aside the judgment of the trial court and dismiss defendant's reconventional demand with prejudice.
Costs at the trial level and on appeal are assessed against defendant-appellee.
REVERSED AND RENDERED.